**SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP**
Btzalel Hirschhorn, Esq.
8002 Kew Gardens, Suite 600
Kew Gardens, NY 11415
Tel: (718) 263-6800
Fax: (718) 520-9401
Email: Bhirschhorn@sbagk.com

Counsel to the Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

Econocrafts Plus, LLC,


                                 Debtor(s)
-------------------------------------------------------------X

Case No. 24-44842

Sub Chapter V Chapter 11



**DEBTOR'S FIRST AMENDED SMALL BUSINESS SUBCHAPTER V PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………………...3

ARTICLE I          DEFINITIONS,          RULES          OF          INTERPRETATION,
                   COMPUTATION OF TIME AND GOVERNING LAW…………………….3

ARTICLE II         TREATMENT OF UNCLASSFIED CLAIMS…………………………....8

ARTICLE III        CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS………....10

ARTICLE IV         TREATMENT OF CLAIMS…………………………….............................11

ARTICLE V          EXECUTION AND IMPLEMENTATION OF THE PLAN………………15

ARTICLE VI         EXECUTORY          CONTRACTS          AND          UNEXPIRED
                   LEASES………………………………………………………….....…..17

ARTICLE VII        OBJECTIONS TO CLAIMS……………………………………………17

ARTICLE VIII       ACCEPTANCE OR REJECTION OF PLAN
                   EFFECT OF REJECTION OF PLAN BY ONE OR MORE CLASSES…….17

ARTICLE IX         POST-CONFIRMATION/DISCHARGE………………...…………….…18

ARTICLE X          INJUNCTION AGAINST INTERFERENCE WITH THE PLAN………….19

ARTICLE XI         MODIFICATION OF THE PLAN…………………………………………  21

ARTICLE XII        RETENTION OF JURISDICTION…………………………………….21

ARTICLE XIII       MISCELLANEOUS………………………………………………………  23

ARTICLE X          EVENTS OF DEFAULT…………………………………………………26

CLOSING THE CASE …………………………………………………………… 27

## INTRODUCTION

Econocrafts, LLC, the debtor herein ("Debtor") hereby proposes the following Chapter 11 plan of reorganization (the "Plan") pursuant to the provisions of Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code").

UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

### ARTICLE I
### DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2.      "Administrative Claims Bar Date" shall mean the last day to file requests for payment of Administrative Claims (except for Professional Fee Claims).

3.      "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

4.      "Administrative Expense Claim Bar Date" shall mean thirty days after the Effective Date.

5.      "Allowed Amount" shall mean the amount of an "Allowed Claim."

6.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

7.     "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Proponent's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

8.     "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

9.     "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

10.     "Assets" shall mean any and all of the respective real or personal property of any nature of the Debtor, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of Debtor, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

11.     "Avoidance Actions" shall mean all claims and causes of action which the Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code.

12.     "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

13.     "Bankruptcy Code" or "Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.).

14.    "Bankruptcy Court" shall mean the Court as defined below.

15.    "Bankruptcy Rule(s)" shall mean the Federal Rules of Bankruptcy Procedure as applicable to cases under the Bankruptcy Code, together with all amendments and modifications made from time to time thereto.

16.    "Bar Date" shall mean January 21, 2025.

17.    "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

18.    "Causes of Action" shall mean any and all claims and causes of action of, and remedies granted to, the Debtor against any third party, including, without limitation, any avoidance claims or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code, any and claims commenced by Special Litigation Counsel (as defined below), and any claims pursuant to any other statutory or common law.

19.    "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

20.    "Claimant" shall mean the holder of a Claim.

21.    "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

22.    "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

23.    "Confirmation Order" shall mean the order of the Court confirming the Plan.

24.    "Court" shall mean the United States Bankruptcy Court for the EASTERN DISTRICT OF NEW YORK.

25.    "Counsel for Debtor(s)" shall mean the law firm of Shiryak, Bowman, Anderson, Gill, & Kadochnikov, LLP ("SBAGK").

26.    "Creditor" shall mean any entity that holds a Claim against the Debtor.

27.    "Debtor" shall mean Econocrafts Plus, LLC.

28.    "Effective Date" shall mean  a day that is thirty days following the date of entry of an order confirming the Plan.

29.    "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

30.    "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

31.    "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

32.    "Government Bar Date" shall mean May 19, 2025.

33.    "Interest" shall mean an existing ownership interest in the Debtor.

34.    "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

35.     "Lien" shall mean a security interest, pledge, title retention agreement, encumbrance or any other charge against or interest in property to secure payment of a debt or performance of an obligation. "Person" shall mean an individual, corporation partnership, joint venture, trust, estate, unincorporated company or association, government unit, or any other form of legal entity.

36.    "Petition Date" shall mean November 19, 2024.

37.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

38.    "Professional(s)" shall mean any entity or person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code.

39.    "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code.

40.    "Professional Fee Claim Bar Date" shall mean the last day for a Professional to file a Professional Fee Claim, which shall be no later than thirty (30) days after the Confirmation Date.

41.    "Proponent" shall mean the Debtor.

42.    "Reorganized Debtor" shall mean the Debtor on and after the Effective Date.

43.    "SBAGK" shall mean counsel to the Debtor as defined above.

44.    "Schedules" shall mean the schedules of assets and liabilities heretofore filed by the Debtor with the Office of the Clerk of the Court pursuant to the Bankruptcy Rule 1007, as amended from time to time.

45.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

46.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

47.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; or (b) a right to setoff to secure the payment of such

Claim. An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code and does not include administrative or priority claims.

48.     "Unimpaired Claimant" shall mean a Claimant holding a claim in an Unimpaired Class.

49.     "Unimpaired Class" shall mean any Class of Claims under the Plan which is not "impaired" within the meaning of Section 1124 of the Code.

50.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

51.     "Unsecured Claim" shall mean a Claim, to the extent of the amount of such Claim which is an Allowed Claim, including a Rejection Claim or default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than a Secured Claim, Administrative Claim or a Priority Tax Claim.

52.     Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

53.     Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not contain any unclassified claims.

54.     **Administrative Expense Claims**

   a.   General Administrative Expense Claims

55.     No Administrative Expense Claims. The Debtor does not anticipate any administrative expense claims other than Professional Fee Claims and any fees awarded to the

Subchapter V Trustee. As such, the Plan will not be paying out any other Administrative Expense Claims.

     b. <u>Professional Fee Claims</u>

56. All attorneys or other professional persons employed by the Debtor pursuant to sections 327, 330, or 1103 of the Bankruptcy Code shall file their respective applications for final Allowance of their respective Professional Fee Claims within thirty (30) days following the Effective Date. Each such professional shall receive on account of such Claim payment in full in cash in the amount Allowed by the Court after notice and a hearing. Professional fees shall be paid out in twelve monthly installments beginning on the Effective Date. Professional Fees shall be entitled to administrative priority status and shall be paid before payment to unsecured creditors.

57. The Subchapter V Trustee shall file a fee application for any fees incurred during the administration of this case within thirty days following confirmation of the Debtor's Plan.

58. **<u>U.S. Trustee Fees</u>** – As this is case was filed under Subchapter V of Chapter 11, pursuant to 28 U.S.C. 1930(a)(6)(A), there are no U.S. Trustee fees due or payable under this Plan.

59. **<u>Voting</u>**. As provided in section 1123(a)(1) of the Code, Administrative Expense Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in this Section. All members of impaired classes which hold Allowed Claims shall be entitled to vote. A class will have accepted the Plan if more than one half the number of members voting accepts the Plan and more than 2/3 of the total dollar amount voting accepts the Plan.

60.    Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (i) the Plan is accepted by at least one impaired class, and it meets all of the other requirements of Section 1129(a) (with the exception of 1129(a)(15)) (as adopted by 11 U.S.C. 1191(b), of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

61.    If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

62.    **Class 1: <u>Econocrafts, LLC (Secured Claim)</u>** – Class 1 consists of the secured claim filed on January 14, 2025, as Claim No. 5 by Econocrafts, LLC ("Econocrafts") in the amount of $185,361.29, by virtue of the note and security agreement executed by the Debtor dated April 30, 2020, in favor of Econocrafts in the original principal amount of  $210,000 with an alleged interest rate at 24%  and recorded with the New Jersey Secretary of State on or about which was secured by all assets of the Debtor.

63.    **Class 2: <u>JP Morgan Chase Bank, N.A. Disputed Secured Claims</u>** – Class 2 consists of the disputed secured claim filed by JP Morgan Chase Bank, N.A. ("Chase"), in the amount of $87,841.73, on January 15, 2025, as Claim #6. The basis of this claim as asserted by Chase is a Business Line of Credit and Security Agreement dated April 25, 2023, in the original amount of $25,000. Chase also attached to its claim two UCC Financing Statements filed with

the State of New Jersey Department of the Treasury, one dated April 25, 2023 and one dated April 27, 2023.

64.    Given that Econocrafts filed its UCC Financing Statement on May 4, 2020, any security interest asserted by Chase is junior to Econocrafts. As provided for in the Debtor's schedules, the Debtor's assets consist primarily of: miscellaneous arts and crafts related inventory, cash on hand, a security deposit with its landlord, and accounts receivables. As seen in the attached exhibit A, the total liquadation value of these assets is approximately $108,000. Given the $185,361.29 senior claim of Econocrafts, there is insufficient equity for Chase's claim to attach.

65.    11 U.S.C. §§502(a) & 506(a) provides for rendering a secured claim as unsecured where there is insufficient equity for lien to attach. Chase's claim has no equity and the Debtor therefore proposes to treat Chase's claim as a general unsecured claim.

66.    Class 3 – Disputed Creditors. Class 3 consists of the creditors the Debtor marked as disputed and who have failed to file a proof of claim. Pursuant to Bankruptcy Rule 3003(c)(2) these creditors shall not receive any distribution under the plan.

67.    **Class 4:** General Unsecured Claims– Class 4 consists of the general unsecured claims.

**ARTICLE IV**
**TREATMENT OF CLAIMS**

68.    **Class 1 – Secured Claim of Econocrafts**– The claim of Econocrafts shall be paid as follows. Econocrafts claim is under-secured. Per the Debtor's attached liquidation analysis, the Debtor's liquidation value is approximately $108,000. Pursuant to 11 U.S.C. §506, Econocraft's claim of $185,361.29 will be bifurcated into secured and unsecured. The secured

portion of Econocraft's claim shall thus be set at $108,000. The remaining $77,361.29 of Econcraft's shall be treated as general unsecured.

69.     Econocrafts shall receive on behalf of the secured portion of its claim, monthly installment cash payments beginning on the Effective Date and continuing for four (4) years in the amount of $1,666.66 per month and $2,333.33 beginning on the forty ninth month of the Plan and continuing through and including the sixtieth month of the Plan. This money shall be paid from the future revenues of the Debtor.

70.     Econocrafts liens shall remain on the accounts receivable, inventory, cash on hand, and assets existing at the time of confirmation of the plan and shall continue to attach to all after acquired accounts receivable, inventory, cash on hand and assets until Econocrafts allowed secured claim has been paid in full without the necessity of filing a  financing statement.

71.     As long as the Debtor remains current on its obligations to Econocrats under this Plan, Econocrafts shall not be permitted to take further action to enforce these liens. In the event of default Econocrafts remedies shall be limited to that as defined in the Default Section.

72.     Econocraft's remaining claim of $77,361.29   will be treated as general unsecured in the same manner as Class four General Unsecured Claims.

73.     **Impairment and Voting** – Econocrafts's secured claim is impaired pursuant to Section 1124 of the Bankruptcy Code and thus is entitled to vote to accept or reject the Plan.

74.     **Class 2: Disputed Secured Claim of JP Morgan Chase Bank, N.A**    –Class 2 consists of the disputed secured claim filed on January 15, 2025, by JP Morgan Chase Bank, N.A. ("Chase") reflected in the claims register as Claim #5. Chase filed a UCC financing statement with the State of New Jersey Department of the Treasury Division of Revenue & Enterprise Services on April 25, 2023. The Debtor disputes the secured status of Chase. The lien

of Chase is under-secured and will be avoided pursuant to 11 U.S.C. §§502(a)&(506)(a). The

claim of Chase will be treated as a general unsecured claim in the same manner as Class 4 claims

which consist of all other general unsecured claims.

75.    **Impairment and Voting** – Class 2 is impaired and thus, the Creditors in Class 2

are entitled to vote to accept or reject the Plan.

76.    **Class 3: Disputed Secured Creditors** – Class 3 consists of creditors who

asserted pre-petition liens against the Debtor, but did not file a proof of claim and whose secured

claims the Debtor disputes as under-secured and subject to avoidance. The creditors in Class 3

include:

77.    **(a) Transportation Alliance Bank, Inc.** ("TAB Bank"). TAB Bank filed a UCC

Financing Statement with the State of New Jersey Department of the Treasury Division of

Revenue & Enterprise Services on August 18, 2022. The lien interest asserted by TAB Bank is

under-secured and will be avoided pursuant to 11 U.S.C. §§502(a)&(506)(a). TAB Bank did not

file a claim. Pursuant to Rule 3003(c)(2) TAB Bank shall not receive any distribution under the

Plan.

78.    **(b) United States Small Business Administration ("SBA").** The SBA did not

file a pre-petition UCC Financing Statement and did not file a proof of claim. The Debtor

scheduled the SBA as a disputed secured creditor. The Debtor entered a pre-petition security

agreement. The Debtor and the SBA entered a pre-petition security agreement dated June 17,

2020. To the extent the SBA may otherwise assert a lien interest resulting from this security

agreement the lien interest is unperfected and is under-secured. Any lien interest asserted by the

SBA will be avoided under this Plan pursuant to 11 U.S.C. §§502(a)&(506)(a). The SBA did not

file a claim. Pursuant to Rule 3003(c)(2) the SBA shall not receive any distribution under the Plan.

79.     **Lien Avoidance** - All liens claimed by Class 3 creditors are hereby avoided.

80.     (a) **Priority**: Econocrafts, LLC filed its UCC Financing Statement on May 4, 2020, establishing senior priority over all subsequently filed liens;

81.     (b) **Lack of Equity**: Based on the Debtor's liquidation analysis (Exhibit A), total asset value is approximately $108,000, which is insufficient to satisfy fully even the senior secured claim of Econocrafts ($185,361.29);

82.     (c) **Wholly Undersecured**: After satisfaction of the senior Econocrafts lien, insufficient equity remains to support any junior liens.

83.     **Treatment of Class 3 Claims** - All liens held by Class 3 creditors shall be deemed avoided and of no force and effect as of the Effective Date;

84.     **Class 4 General Unsecured Claims**. Class Four consists of General unsecured creditors. The total allowed general unsecured claims that has either filed a general unsecured proof of claim, filed a secured proof of claim but whose lien is being avoided, or has filed a secured claim but the claim is being bifurcated, or that the Debtor has scheduled as undisputed, totals $290,858.11. These claims shall be paid a pro rata distribution of thirteen point four seven percent (13.47%) of their claim at zero percent interest per annum over the next five (5) years. Payments to general unsecured creditors shall begin on first day of the thirteenth month following of the plan and continuing every year thereafter for an additional three (3) years and eleven months remaining on this date.

85.     The breakdown of each claim with the amount each of creditor will receive under the Plan is detailed at Exhibit A to the Plan.

86.    **Impairment and Voting** – Class 4 is impaired and thus, the Creditors in Class 4 are entitled to vote to accept or reject the Plan.

87.    **Class 5: – Equity Holders - Treatment** – Class 5 consists of the Debtor's sole member and owner Jonathan Czegledi. The Debtor's member shall not receive any payments under the Plan but shall retain his ownership interests in the Debtor.

88.    **Impairment and Voting** – Class 5 is unimpaired pursuant to Section 1124 of the Bankruptcy Code and is thus deemed to have accepted the Plan.

**ARTICLE V**
**EXECUTION AND IMPLEMENTATION OF THE PLAN**

89.    **Means of Execution/Funding** – The funds necessary for the implementation of the Plan shall be from the Debtor's Cash on hand and disposable income over **the five (5) year period** beginning 30 days following the Effective Date.

90.    **Manner of Payment** – Any payment of Cash made under the Plan may be made either by check drawn on a domestic bank, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Proponent.

91.    **Good Faith** – This Plan is proposed by the Debtor in good faith in the belief that more will be realized by the Claimants than would be the case if the Assets of the Debtor were liquidated under Chapter 7 of the Code.

92.    **Distribution of Cash.** Except as otherwise provided in the Plan, the Cash required to be distributed to holders of Allowed Claims under the Plan shall be distributed by the Debtor as each distribution comes due under this Plan, except that to the extent that a Claim becomes an Allowed Claim after the respective distribution date, in which case distribution shall be made within fourteen (14) days after the order allowing such Claim becomes a Final Order.

93.    Any property or notice which a person or entity is or becomes entitled to receive pursuant to the Plan shall be delivered by regular mail, postage prepaid, in an envelope addressed to that person or entity at the address indicated on a properly filed proof of Claim or, absent such a proof of Claim, the address that is listed for that person or entity on the Schedules. Any person or entity entitled to a distribution may notify the Debtor in writing of its change of address, which address shall become the address for the Debtor to mail further distributions, if any. The date of distribution hereunder shall be the date of mailing, and the property distributed in accordance with this Section shall be deemed delivered to such person or entity regardless of whether such property is actually received by that person or entity. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding such faction to the nearest whole cent (up or down).

94.    Disbursing Agent: Notwithstanding the provisions set forth in section 1194 of the Bankruptcy Code, the Debtor shall directly make all payments due under this Plan. The Debtor is both capable of issuing such payments and the cost for doing so will be negligible. The Debtor believes that proceeding in this manner is in the best interests of the estate and its creditors.

95.    **Causes of Action** – The Debtor does not have any claims giving rise to any cause of action and does anticipate bringing any causes of action.

96.    **Post-Effective Date Fees and Expenses** – From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**ARTICLE VI**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

97.    The Debtor has one executory contract in the form of a sublease with Aaron Klein and Minted Promos Inc. The subtenants rent space for storage from the Debtor's warehouse. This sublease will be assumed.

**ARTICLE VII**
**OBJECTIONS TO CLAIMS**

98.    The Reorganized Debtor shall have the sole and exclusive right to file objections to claims in the event grounds exist to object to particular claims. Claims objections must be filed no later than 60 days after the Effective Date. Any such objection shall be served upon the United States Trustee and the Claimant holding the Claim to which objection is made. However, the Debtor does not anticipate filing any such objections.

99.    Amendment of Claims. A Claim may be amended prior to the Effective Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the Debtor and the holder of the Claim and the Debtor to decrease, but not increase, the face amount thereof.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF PLAN
## <u>EFFECT OF REJECTION OF PLAN BY ONE OR MORE CLASSES</u>

100.    **<u>Impaired Classes to Vote</u>** – Each Claimant who is a member of an Impaired Class under this Plan is entitled to vote, if either (i) a Claim has been scheduled by the Debtor, or (ii) the Creditor has filed a Proof of Claim on or before the Bar Date.

101.    **<u>Acceptance of Class of Claimants</u>** – Each Class of Claimants shall be deemed to have voted to accept the Plan if the Plan is accepted by Claimants of such Class that hold at least two-thirds of the aggregate dollar amount and more than one-half in the number of the Allowed Claims of Claimants of such Class that vote to accept or reject the Plan.

102.    **<u>Confirmation Pursuant to Section 1191(b)</u>** – In the event that a sufficient number of holders of a particular Class of Claims do not accept the Plan, then the Debtor requests confirmation of the Plan pursuant to Section 1191(b) of the Code or as otherwise authorized under the Code.

## ARTICLE IX
## <u>POST-CONFIRMATION/DISCHARGE</u>

103.    **<u>Title to Assets</u>** – On and after the Effective Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges and claims of every kind whatsoever unless otherwise provided herein.

104.    **<u>Discharge of Liabilities</u>** – Pursuant to 11 U.S.C. Section 1141(d)(1), except as otherwise expressly provided in this Plan or the Confirmation Order, the Debtor shall be discharged and released of all Claims arising prior to the Effective Date. The Confirmation of

this Plan shall as of the Effective Date: (i) discharge the Debtor, the Reorganized Debtor and any of its Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a proof of claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Plan; and (ii) preclude all Entities from asserting against the Debtor, the Reorganized Debtor or any of its Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

105. **Filing of Additional Documents** – On or before the Confirmation Date, the Debtor shall file with the Court such agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

106. **Automatic Stay** – Pending the closing of the case pursuant to Section 350(a) of the Code, and/or until the Debtor receives a discharge from the Court; the stay imposed by Section 362 of the Code shall remain in effect as to the Debtor.

107. **Final Decree** – The Debtor shall move for the entry of a final decree closing the within Chapter 11 case within sixty days following the Effective Date.

19

**ARTICLE X**
**INJUNCTION AGAINST INTERFERENCE WITH THE PLAN**

108.    **No Interference** – Other than as provided herein, no Person may commence any action precluding the implementation and consummation of this Plan, or perform any act, which would have the effect of interfering with the implementation and consummation of this Plan and the payments to be made hereunder.

109.    **Confirmation Injunction** – Other than such liabilities and obligations otherwise assumed or provided hereunder, and as set forth in the Confirmation Order (a) the rights afforded herein and the treatment of all Claims and Interests herein, shall be in exchange for and in complete satisfaction and release of, all Liens Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or any of its Assets and properties, (b) upon completion of all payments contemplated under the Plan, all such Claims against the Debtor shall be satisfied and released in full, and (c) all Persons shall be precluded from asserting and shall be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against the Debtor, its Assets or property, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

110.    **Exculpation** – The Reorganized Debtor and its agents (acting in such capacity), and any professional person employed by the Reorganized Debtor shall not incur any liability to any Person and/or Entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of this Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document

created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or this Plan; provided, however, that the foregoing exculpation from liability will not apply to actions or omissions taken in bad faith or as a result of gross negligence or willful misconduct. Nothing in this Plan shall limit the liability of any professionals to their respective clients for malpractice pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

## ARTICLE XI
## MODIFICATION OF THE PLAN

111.    **Pre-Confirmation Modification** – At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code. In the event there is a modification of the Plan, then the Plan as modified shall become the Plan.

112.    **Pre-Consummation Modification** – At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified, but it may not be modified so that the Plan, as modified, fails to meet the requirements or Sections 1122 and 1123 of the Code. The Plan as modified under this Section, becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

113.    **Non-Material Modification** – After the Confirmation Date, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Claimants, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry of the purposes, intent and effect of this Plan.

## ARTICLE XII
## <u>RETENTION OF JURISDICTION</u>

114.    **<u>Retention of Jurisdiction</u>** – The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings: (a) to consider any modification of the Plan under section 1193 of the Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear, determine and enforce all Claims and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all  requests for compensation and/or reimbursement of expenses which may be made; (e) to value assets of the Estate; (f) to enforce the Confirmation Order, the final decree, and all injunctions therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order; (i) to determine all questions and disputes regarding title to the assets of the Debtor; (j) to reexamine Claims which may have been allowed for purposes of voting; (k) to determine objections which may be filed to any Claims; (l) to grant extensions of any deadline set herein; and (m) to enter any order, including injunctions, necessary to enforce the terms of the Plan, and the rights and power of the Debtor under the Code, this Plan and as the Court may deem necessary.

## ARTICLE XIII
## <u>SUBCHAPTER V PROVISIONS</u>

115.    Liquidation Analysis. In order to confirm this Plan, the Debtor must establish that all creditors and equity interest holders who do not accept the Plan will receive at least as much

as such claim holder or equity interest holder would receive in a Chapter 7 liquidation. As set forth in the Liquidation Analysis attached as Exhibit A, in the event of a liquidation, unsecured creditors would not receive any distribution. The Debtor submits that the Plan satisfies this requirement for confirmation and will ensure that creditors will receive no less than what they would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

116.    Projections. In order to confirm this Plan, the Debtor must establish that it will have enough cash over the life of the Plan to make the required distributions proposed under the Plan. Section 1191(d) of the Bankruptcy Code requires that all of the Debtor's disposable income be contributed to the Plan. Attached hereto as Exhibit B are financial projections which demonstrate that the Plan includes all of the Debtor's disposable income. As such, the Debtor submits that the Plan satisfies this requirement for confirmation.

### ARTICLE XIIII
### MISCELLANEOUS

117.    **Choice of Law** – Except to the extent superseded by the Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the choice of law rules thereof.

118.    **Payment of Such Statutory Fees** – All fees payable pursuant to 28 U.S.C. §1930 shall be paid on or before the Effective Date and timely thereafter until the Case is closed.

119.    **Headings** – The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the terms in this Plan.

120.  **Successors and Assigns** – The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such Person.

121.  **Calculation of Time Periods** – Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

122.  **Other Actions** – Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

123.  Notices. Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

> Shiryak Bowman Anderson Gill & Kadochnikov, LLP
> ATTN: Btzalel Hirschhorn, Esq.
> 8002 Kew Gardens Rd., Ste. 600
> Kew Gardens, NY 11415

124.  The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

125.  Enforceability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

126.  Unclaimed Funds. Except as otherwise provided herein, in the event any claimant fails to claim any distribution within one hundred twenty (120) days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim.

127.    Reservation of Rights. Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Chapter 11 Case.

128.    Post-Confirmation Reports. No Post-Confirmation Reports shall be required of the Debtor or the Disbursing Agent.

129.    Withdrawal or Revocation of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.

130.    Interpretation, Rules of Construction, Computation of Time, and Choice of Law. Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in §102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan, unless the context requires otherwise. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

131.    No Admissions. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by the Debtor with respect to any matter set forth herein, including without limitation, any liability on or treatment of any Claim, or the propriety of a Claim's classification.

## ARTICLE X
## EVENTS OF DEFAULT

132.    The Debtor shall be in default under this Plan in in the event that it fails to satisfy its payment obligations, including but not limited to its obligations to make payments on time or in the amount set forth in this Plan, and such default is not cured within ten (10) days thereafter.

133.    Upon the occurrence of an uncured default under the Plan, any holder of a Claim shall have the right to seek relief from the Bankruptcy Court to enforce the Plan, convert or dismiss the case, or seek any other relief as just and appropriate.

## CLOSING THE CASE

134.    Upon substantial consummation, the Debtor may move for a final decree to close

the Bankruptcy Case and to request such other orders as may be just.


Respectfully Submitted,
Econocrafts Plus, LLC

By: /s/ Jonathan Czegledi
Managing Member

Dated: July 14, 2025
Brooklyn, New York


BY: /s/**BTZALEL HIRSCHHORN**
Btzalel Hirschhorn, Esq.
Shiryak Bowman Anderson Gill &
Kadochnikov, LLP
80-02 Kew Gardens Rd., Ste. 600
Kew Gardens, NY 11415
(P) (718) 263-6800
Bhirschhorn@sbagk.com
Counsel for Debtor